RONALD S. KRAVITZ
**MILLER SHAH LLP**
201 Filbert Street, Suite 201
San Francisco, CA 94133
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
rskravitz@millershah.com

*Attorneys for Plaintiff*

# IN THE UNITED STATES DISTRICT COURT
## FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| THUAN NGO,<br><br>　　　　　Plaintiff,<br><br>v.<br><br>UTMB Healthcare Systems, Inc., UTMB Healthcare Systems Retirement Plan, UTMB Healthcare Systems Retirement Plan Committee, Does 1 -10,<br><br>　　　　　Defendants. | Case No.:  8:21-cv-02061<br><br>**COMPLAINT** |

## I. INTRODUCTION

1. Plaintiff, Thuan Ngo ("Plaintiff" or "Ngo"), as a participant of the UTMB Healthcare Systems Retirement Plan ("Plan"), brings this action under 29 U.S.C. § 1132, on behalf of himself and the Plan, against Defendants UTMB Healthcare Systems, Inc. ("UTMB"), UTMB Healthcare Systems Retirement Plan ("Plan"), the UTMB Healthcare Systems Plan Committee, and Does 1 – 10 (collectively "Defendants") for retirement benefits and for breach of fiduciary duty under the Employee Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001, et seq.

## II. PARTIES

2. Plaintiff, Thuan Ngo is a former employee of UTMB Healthcare Systems and participant in the Plan under 29 U.S.C. § 1002(7). Plaintiff is a resident of Mission Viejo, California, and thus is a citizen of California.

3. Defendant UTMB Healthcare Systems Plan is an employee pension benefit plan and a defined contribution plan within the meaning of ERISA and was established and maintained for the purpose of providing retirement to employees and participants.

4. Defendant UTMB Healthcare Systems Plan Committee is a named fiduciary under the Plan.

5. Defendant UTMB Healthcare Systems is a named Administrator for the Plan within the meaning of ERISA Section 3(16)(A), 29 U.S.C. Section 1002(16)(A) and is the plan sponsor and a fiduciary and a named fiduciary with respect to the Plan within the meaning of ERISA Sections 3(16)(A), (B), 3(21), and 402 (a), 29 U.S.C. Sections 1002(16)(A), (B), 3(21), 1002(a), 1102(a).

6. Defendants Does 1 to 10, inclusive, are sued under fictitious names. Plaintiff is informed and believes, and on that basis alleges, that each of the defendants sued under fictitious names is in some manner responsible for the wrongs and damages alleged below, in so acting was functioning as the agent, servant, partner, and employee of the co-defendants, and in taking the actions mentioned below was acting within the course

and scope of his or her authority as such agent, servant, partner, and employee, with the permission and consent of the co-defendants. The named defendants and Doe defendants are sometimes hereafter referred to, collectively and/or individually, as "Defendants."

### III. JURISDICTION AND VENUE

7. This Court has jurisdiction pursuant to ERISA sections 502(e) and (f), 29 U.S.C. §§ 1132(e) and (f) and 28 U.S.C. §1331.

8. Venue is proper in this District pursuant to ERISA Section 502(e), 29 U.S.C. § 1332(e), and 28 U.S.C. § 1391 because Defendants breached their obligations to Plaintiff in the Central District of California.

### IV. FACTUAL BACKGROUND

**A. Improper Reallocation of Mr. Ngo's Investments**

9. In June, 2019, on behalf of the Plan, the Plan's third-party recordkeeper, Empower Retirement ("Empower"), sent a notice to Plaintiff entitled "Important Investment Option(s) Updates" to Plan participants. The notice provided "As of July 16, 2019, your future contribution allocations and current account balance will be mapped . . . Mapping is a process by which your future contribution allocations and current account balance is a process by which your future contribution allocations and current account balance in a current investment option will be transferred to a different investment option at the direction of your Plan Administrator."   The Notice further provided that "If you have not elected investment option(s) as of July 16, 2019 your allocations and current account balance will be mapped into your Plan's QDIA default investment option(s) listed above." Plaintiff reasonably understood this language to mean what was stated i.e., if he had not selected investment options, that his money would be placed in a default funds elected by the administrator.  The June  Notice did not provide reasonable notice that Plaintiff had to re-select his investment choices to keep his money invested in Edgewood Growth Instl and Harford Dividend and Growth or that his selections would

2
Complaint

be overridden and the money would be invested in American Funds 2035, an investment option in which he did not want to invest,

10. Notably, on July 13, 2020, Defendants' own third-party plan administrator agreed with Plaintiff's interpretation of the Notice i.e., that based on the language in the Notice the remapping of Plaintiff's previously-selected investment options should not have occurred.

11. The Notice also was misleading and deficient in that it failed to inform participants who had selected investment options that earlier elections will be disregarded and that they had to act affirmatively to stop the fiduciaries remapping their investments to an investment that they did not select. This was particularly true for participants like Plaintiff who were no longer employed by the company.

12. The first paragraph of the notice letter stated that "If you are already eligible to participate in the plan…prior to the upcoming investment option changes, you **may** want to take action with respect to your investment option(s)." Emphasis added.  This paragraph led Plaintiff to believe that there was no requirement to take action affirmatively to maintain his current investment selections.

13. The second paragraph of the notice referenced the fact that there were "investment option(s) offering in your retirement plan ("Plan")" that were undergoing changes and that the "updates are made so you may continue to select from a diverse and competitive array of quality investment option(s). UTMB HealthCare Systems Retirement Plan has directed Empower Retirement to complete some updates regarding the investment option(s) in your Plan."

14. Again, there was no indication whatsoever with regard to any requirement that the participant needed to act affirmatively to preserve previously selected investment options that were not going to be changed as a result of the updates.

15. In the third paragraph, the Plan referenced Investment Option(s) Mapping and stated:

"As of July 16, 2019, your future contribution allocations and current account

balance will be mapped according to the chart below. Mapping is a process by which your future contribution allocations and current account balance in a current investment option will be transferred to a different investment option at the direction of you Plan Administrator."

16. Plaintiff, as a plan participant who no longer is an employee of the Company, reasonably believed that, based on the language in the notice, that the mapping would pertain to future contributions and/or account balances not invested in one of the investment options that the Plan is going to continue to offer.

17. To clearly advise a participant in Plaintiff's circumstances that his previously-selected investment options would not be honored unless he affirmatively instructed the fiduciaries not to remap his investments, the letter should have spelled out, in no uncertain terms, that Plaintiff's investments in the Edgewood Growth Instl and Hartford Dividend and Growth funds would be liquidated and transferred to a target date investment option unilaterally selected by the fiduciaries.

18. The fourth paragraph of the letter contained similarly misleading language which lulled Plaintiff into not taking any action as it states:

> **You do not need to take any action**, if you approve the changes shown above. If you do not opt-out of the mapping, **any pending future dated investment transaction(s) will be cancelled as of July 16, 2019**. (Emphasis added.)

19. Again, the letter leads a reasonable plan participant to believe that only "pending future investment transactions will be impacted by the fiduciaries' action and not investment options that already have been selected by Mr. Ngo—options that the Plan would continue to offer.

20. The letter further misleads a reasonable plan participant into believing that no action was required on his part when it provides:

> If you would like to opt-out of this mapping process and either keep or change your **future contribution allocations or current account balances**, you must complete one of the following actions:

4
Complaint

-Visit the plan's website at empowermyretirement.com to access your account to opt-out or make changes.

-Contact our Client Service Department at 1-800-701-8255 during normal business hours. (Emphasis added.)

21. The reference to *future contributions* and *current account balances* (and *not current investments* selected by Plaintiff) served only to lead Plaintiff and those similarly situated that no action would be required to maintain existing investment options that the Plan would continue to offer.

22. The language in the June Notice would lead a reasonable plan participant who carefully elected to invest in an option that was outside the target date funds to think that the fiduciaries would not usurp control over his investment selection unless the investment was going to be removed from the lineup entirely or was imprudent under ERISA.

23. The June Notice also noted that "if you request an investment transaction for your account between June 14, 2019 and July 15, 2019, your action will be treated as your election to opt-out of the mapping. Some examples of an investment transaction for your account are completing any of the following:

-Opting out

-Investment allocation change

-Fund to fund transfer."

24. None of these "investment transactions" would apply to a participant who has previously-selected an investment option in which he wished to remain.

25. The June Notice and subsequent communications on which the Plan relies failed to comply with the ERISA's Safe Harbor provisions as set out in in 29 C.F.R. S 2550.404c-5(c) because they do not adequately explain what will happen to existing investment options previously-selected by participants and continuing to be offered in the Plan.

26. The reasonable participant would read the notices to apply to future

5
Complaint

contribution allocations or current account balances of cash that have not been placed in investments selected by the participants.

27. A reasonable participant would not believe that the notice would require the participant to opt-out of an investment he affirmatively selected and the Plan continued to offer.

28. The notices should have warned participants like Plaintiff that, should he fail to opt-out of the mapping, the fiduciaries of the Plan would override his investment selection and transfer **existing investments** (not future contributions or existing account balances) to another investment decided by the Plan fiduciaries.

29. The June Notice did not provide such a warning and, to the contrary, lulled Plaintiff into inaction and the belief that his investment selection would be honored and not be unilaterally changed by the fiduciaries.

30. When Plaintiff discovered the improper reallocation, he promptly contacted the Empower call center.

31. The Empower representatives retained by Defendants to administer the Plan and advise Plan participants on what to do with regard to the investment selections confirmed that they believed that the unilateral decision to reallocate Plaintiff's selected investments without express direction by Plaintiff was improper.

**B.    Failure to Correct the Error and Reallocate the Investments**

32. On or about July 16, 2020, Plaintiff emailed Empower memorializing his conversation about the improper mapping and expressly requested that Defendants correct the error and provide him with the gains made by his original fund choices during the time period the investment was improperly in the American Funds 2035. Plaintiff noted that he lost a significant amount of gains as a result of his account being unilaterally reallocated, and that the fees associated with the American Funds 2035 were very high, approximately $130 every 3 months, in addition to a $15 maintenance fee.

33. Unfortunately, Defendants failed to correct the error. In response to

Plaintiff's request to correct the allocation and reallocate the assets to the prior investments in Edgewood Growth Instl and Hartford Dividend and Growth, upon information and belief, Defendants only changed Plaintiff's account to provide for the investment allocation of **future** contributions.

34. This was an obvious error given that Plaintiff is no longer employed by the company and would therefore not be making on future contributions.

35. For the next year, Plaintiff complained of the improper 2019 re-allocation of his investments and 2020 failure to return the investments to the ones he selected.

36. During that time period, the stock market soared to record highs and Plaintiff was unable to enjoy the benefit of the investments that he selected, resulting in losses in excess of $26,000.

37. During a telephone conference call with Empower on August 4, 2021, Empower conceded that it and/or the Plan erred in failing to reallocate Plaintiff's investment in 2020 pursuant to Plaintiff's instructions.

38. On August 4, 2021, after months of demanding that the investments be "remapped" to the ones selected by Plaintiff, the Plan finally restored Plaintiff's investments selections.

39. Defendants have failed to compensate Plaintiff for the lost benefits, earnings, and attorney fees that he has incurred as a result of Defendants' actions.

C.  **Exhaustion of Administrative Remedies**

40. On or about November 23, 2020, Plaintiff submitted a claim for benefits alleging that the notice provided to Plaintiff was not sufficiently clear to inform him that his investments would be unilaterally remapped.

41. On or about January 29, 2021, Defendants denied Plaintiff's claim for benefits, asserting that the notice provided to Plaintiff of the imminent remapping was sufficient under the ERISA safe harbor provisions set out oi 29 C.F.R. 255.404c-5(c).

42. On or about March 18, 2021, Plaintiff appealed the denial of his claim for benefits, asserting that 1) the Notices on which Defendants relied did not provide

reasonable notice that Plaintiff need to "re-elect" his investment options in Edgewood Growth Instrl and Hartford Dividend and Growth or his money would be transferred to American Funds 2035; 2) Defendants did not have the authority to move money that Plaintiff had invested in funds still available under the Plan to a new investment, without his consent or require Plaintiff affirmatively to opt-out of a forced transfer to funds preferred by Defendants; 3) Defendants failed to disclose that Defendants benefited to the detriment of Plaintiff and the other participants that by moving funds to the American Funds investment options Defendants benefited by the transfers; and 4) Defendants continued to refuse to comply with Plaintiff's request to return the transferred funds to Plaintiff's designated investment options

43. On or about June 25, 2021, Defendants denied Plaintiff's appeal, asserting that the notice received by Plaintiff complied with ERISA's safe harbor division and advising Plaintiff to file his claim in federal court by December 22, 2021.

## COUNT I

**(Violation of the Terms of the Plan Pursuant to ERISA § 502(a)(1)(B))**

44. Plaintiff restates and re-alleges the foregoing paragraphs as if fully set forth herein.

45. ERISA § 501(a)(1)(B), 29 U.S.C. § 1132(a)(1)(B), authorities a participant or beneficiary of a plan to bring a civil action to recover benefits due under the terms of the plan, to enforce his/her rights under the terms of the plan, and to clarify his/her rights to future benefits under the plan.

46. Pursuant to the Plan terms and ERISA, Plaintiff's investment selections should have been remained in place based on his previously-selected investment elections and not unilaterally reallocated to a target date fund selected by Defendants without Plaintiff's consent.

47. By virtue of the acts alleged above, Defendants violated the terms of the Plan and ERISA. Defendants further violated the terms of the Plan by failing to comply with Plaintiff's request to reallocate his investment selections.

48. As a direct and proximate result of Defendants' violations of the terms of the Plan, Plaintiff has been harmed and has been deprived of benefits due under the Plan. Plaintiff has also incurred substantially higher fees as a result of the improper reallocation of his investments.

49. Plaintiff is entitled to an order and judgment clarifying his rights under the Plan and declaring that Defendants violated the terms of the Plan and ERISA, requiring Defendants to make Plaintiff whole by providing him with the income and capital appreciation he would have received from the investments selected by Plaintiff had his investment not been reallocated to the qualified default investment alternative without his consent, together with prejudgment and post-judgment interest, attorney fees, and costs. Accordingly, Plaintiff asserts this claim for himself to enforce his rights under the terms of the Plan and to recover those benefits due to him under the terms of the Plan.

## COUNT II
### (Breach of Fiduciary Duty)

50. Plaintiff incorporates by reference the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

51. ERISA Section 404(a)(1), 29 U.S.C. 1104(a)(1) provides in relevant part:

(a) Prudent man standard of care

(1) Subject to sections 1103(c) and (d), 1342, and 1344 of this title, a fiduciary shall discharge his duties with respect to a plan solely in the interest of the participants and beneficiaries and—

    (A) for the exclusive purpose of:

        (i) providing benefits to participants and their beneficiaries; and

        (ii) defraying reasonable expenses of administering the plan;

    (B) with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims;

\*\*\*

(D) in accordance with the documents and instruments governing the plan insofar as such documents and instruments are consistent with the provisions of this subchapter and subchapter III.

52. Defendants have a fiduciary responsibility to provide Plaintiff with adequate disclosures of any changes in the benefit plans and to administer the Plan in accordance with the documents and instruments governing the Plan and in accordance with ERISA.

53. Defendants breached their fiduciary duties and engaged in conflicted decision-making by the acts and omissions complained of above including, but not limited to, *inter alia*: by reallocating the previously-selected investments of Plaintiff to a qualified default investment alternative that Plaintiff did not select, by failing to provide adequate notices of the change to the participants, and/or by failing to take steps to remedy breaches of fiduciary duty.

54. As a direct and proximate result of Defendants' breaches of duties, Plaintiff has suffered losses and damages. Plaintiff and the Plan have also incurred substantially higher fees as a result of the improper reallocation of his investments.

55. Plaintiff is entitled to an order and judgment declaring that Defendants violated the terms of the Plan, requiring Defendants to make Plaintiff whole by providing him with the income and capital appreciation that he would have received from the previously-selected investments had his investment not been reallocated to the qualified default investment alternative together with prejudgment and post-judgment interest, attorney fees, and costs.

56. Pursuant to ERISA § 409(a), 29 U.S.C. § 1109 (a), Plaintiff and Plan participants are entitled to an order and judgment imposing personal liability on fiduciaries that breach their fiduciary duties, including but not limited to: (1) reimbursement of losses to plan assets; (2) payment of profits made by the fiduciary's use of plan assets; (3) removal of a breaching fiduciary; and (4) "other equitable or remedial relief as the court may deem appropriate.

## COUNT III
### (Breach of Fiduciary Duty)

57. Plaintiff incorporates by reference the allegations in the previous paragraphs of this Complaint as if fully set forth herein.

58. Defendants disregard of Plaintiff's instruction to reallocate the investments options to those previously selected by Plaintiff constituted a further breach of fiduciary duty as Defendants failed to discharge their duties.

59. As a proximate result of Defendants' disregard of his instruction to reallocate Plaintiff's investments after his July 16, 2021 email, Plaintiff has suffered losses and damages. Plaintiff has also incurred substantially higher fees as a result of the Defendants' failure to reallocate his investments pursuant to his instructions.

60. Plaintiff is entitled to an order and judgment declaring that Defendants breached their fiduciary duties under ERISA, requiring Defendants to make Plaintiff whole by providing him with the income and capital appreciation he would have received from the previously-selected investments had his investment not been reallocated to the qualified default investment alternative.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, on behalf of himself and the Plan, demands judgment against Defendants for the following relief:

(a) Declaring that Defendants violated the terms of the Plan;

(b) Declaring that Defendants violated ERISA Section 404, and the regulations thereunder;

(c) Declaring that Plaintiff is entitled under the Plan and under ERISA to be made whole by providing him with the income and capital appreciation they would have received from the previously-selected investments had the investments not been reallocated to the qualified default investment alternative;

(d) Enjoining Defendants from violating the terms of the Plan;

(e) Enjoining Defendants from violation ERISA Sections 404 and the regulations thereunder;

(f) Surcharging the fiduciaries and trustees for the full amount of benefits to make Plaintiff whole;

(g) Enjoining Defendants to make Plaintiff whole in accordance with the terms of the Plan and ERISA;

(h) Ordering Defendants to disgorge the value of benefits they received as a result of the illegal reallocation of previously-selected investments together with all profits attributable thereto;

(i) Awarding Plaintiffs with pre-judgment and post-judgment interest at the maximum permissible rates, whether at law or in equity;

(j) Awarding Plaintiff attorney fees under ERISA Section 502(g), 29 U.S.C. 1132(g);

(k) Awarding Plaintiff costs of suit and other recoverable expenses of litigation; and

(l) Awarding such further and additional relief the Court deems appropriate and just under all of the circumstances.

Respectfully submitted,

**MILLER SHAH LLP**

Dated: December 15, 2021

/s/ Ronald S. Kravitz

RONALD S. KRAVITZ
201 Filbert Street, Suite 650
San Francisco, CA 94133
Telephone: (415) 429-5272
Facsimile: (866) 300-7367
rskravitz@millershah.com

*Counsel for Plaintiff*